# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# DAVENPORT DIVISION

| | | |
|---|---|---|
| MARIE TAYLOR, | * | |
| | * | CIVIL NO. 3:04-CV-60032-TJS |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | **MEMORANDUM OPINION AND** |
| DEREK FRANK and CITY OF IOWA | * | **ORDER GRANTING** |
| CITY, individually and in their official | * | **DEFENDANTS' MOTION FOR** |
| capacities, | * | **SUMMARY JUDGMENT** |
| | * | |
| Defendants. | * | |

## I. INTRODUCTION

Marie Taylor brought this action under 42 U.S.C. section 1983 against the City of Iowa City and Derek Frank, a police officer. (Complaint (Clerk's No. 1).) She asserts various allegations which relate to the conduct of officer Frank during her arrest for Operating While Intoxicated on March 23, 2002, and to a subsequent charge of Driving While Revoked on January 27, 2003. *Id.* ¶ 17.

Taylor lists numerous legal claims in her Complaint including use of excessive force, assault and battery, outrageous conduct, false arrest, false imprisonment, malicious prosecution, abuse of legal process, intentional infliction of physical injury and emotional distress, and violations of her constitutional rights. *Id.* ¶ 19. She also asserts a claim against the City as the employer of officer Frank based on the principle of respondeat superior. *Id.* ¶ 20.

Taylor was represented by legal counsel at the time the complaint was filed and during the discovery phase of the litigation. Her counsel withdrew from his representation, however, due to health problems. (*See* Motions for Continuance and Withdrawal as Record Counsel (Clerk's No. 34); Order (Clerk's No. 35).) Taylor indicated to the court that she was prepared to handle the case and is now proceeding pro se. (*See* Status Report (Clerk's No. 36).)

Presently before the court is Defendants' Motion for Summary Judgment (Clerk's No. 32). Defendants contend that they are entitled to summary judgment on all of the claims asserted by Taylor. For the reasons that follow, the court agrees.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing a properly supported motion "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed. R. Civ. P. 56(e)).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* At this stage, the court's

function is not to determine credibility, weigh the evidence or determine the truth of the matter. *Id.* at 249, 255. Instead, the court views the record in the light most favorable to the nonmoving party and determines whether there is a genuine issue for trial. *Id.*

### III.  UNDISPUTED MATERIAL FACTS

On March 23, 2002, Marie Taylor, who also uses the name Rosenda Marie Harrison, struck a utility pole with her motor vehicle. (*See* Iowa City Police Motor Vehicle Accident Report (Ex. 1 to Defendants' Appendix (Clerk's No. 33).)  She was given a traffic citation for failure to maintain control of her vehicle and was arrested by Iowa City police officer Derek Frank for operating the vehicle while under the influence of alcohol. (*See* Johnson County Complaint; Iowa Uniform Citation and Complaint (Ex. 1 to Defendants' Appendix).)

The majority of officer Frank's interactions with Taylor were recorded audibly by an in-car video and audio recording device in officer Frank's police vehicle.  Because the camera was aimed primarily at the vehicle's dashboard, very little of the incident was captured on video. (*See* Videotape (Ex. 14 to Defendant's Appendix & Ex. 35 to Plaintiff's Appendix (Clerk's No. 49); Frank Dep. Tr. at 27-28.)

Before officers arrived at the scene, Taylor went to the nearby home of Earl Gingerich and Diane Funk Gingerich and asked to use the phone to call for assistance with her car. (Gingerich Dep. Tr. at 8.)  While in the home, Taylor told Ms. Gingerich that she had a "beer or two" at a bar. *Id.* at 8, 25.  Ms. Gingerich could smell alcohol on Taylor's breath. *Id.* at 9, 16.  They noticed that officers had arrived and Taylor went outside. *Id.* at 9, 14-15.

Upon arriving at the scene of the accident, officer Frank spoke with officer Chris Lenoch of the Coralville Police Department. (Frank Dep. Tr. at 5.)  Officer Lenoch informed

officer Frank that he had performed a horizontal gaze nystagmus test on Taylor who failed the test with a score of six. *Id.*

Officer Frank then approached Taylor and asked for her identification. *Id.* When he spoke to her, officer Frank detected a strong odor of alcohol and observed that Taylor had bloodshot, watery eyes, and was staggering. (*See* O.W.I. Arrest Report at p. 1 (Ex. 1 to Defendants' Appendix).) Taylor informed officer Frank that she had one beer to drink at a bar prior to the accident. (Police Patrol Video Tr. at 65, 100; O.W.I. Arrest Report at pp. 3, 5; Frank Dep. Tr. at 30.) In describing the accident, Taylor stated that she had to turn to miss another car, turned too much, and then hit the pole. (Police Patrol Video Tr. at Defendants' Appendix pp. 63-64; O.W.I. Arrest Report at p. 3.)

Officer Frank asked Taylor to perform another horizontal gaze nystagmus test which she failed. (Police Patrol Video Tr. at Defendants' Appendix p. 66; O.W.I. Arrest Report at p. 4.) Officer Frank then administered a preliminary breath test which registered a reading of .137. (Police Patrol Video Tr. at Defendants' Appendix pp. 67-69.) Officer Frank asked Taylor to accompany him to the police department for more tests. *Id.* at 69-70.

Another Iowa City police officer, Jeffrey Fink, was called to the scene as a backup officer and was present during officer Frank's interaction with Taylor. (Fink Dep. Tr. at 3-4.) Officer Fink completed an accident report, had Taylor's vehicle towed, and obtained statements from the Gingerichs. *Id.* at 11.

Officer Frank transported Taylor to the Iowa City Police Department for further field sobriety testing. (Police Patrol Video Tr. at Defendants' Appendix pp. 71-73; Frank Dep. Tr. at 9.) Taylor submitted to and failed the walk-and-turn and one-legged stand field sobriety

tests. (Police Patrol Video Tr. at Defendants' Appendix pp. 73-82; O.W.I. Arrest Report at p. 4; Frank Dep. Tr. at 13-14.)  Officer Frank placed Taylor under arrest and invoked the implied consent law. (Police Patrol Video Tr. at Defendants' Appendix pp. 82-83; Frank Dep. Tr. at 14.)

Because the City's breathalyzer was not operating correctly, officer Frank transported Taylor to the University of Iowa Department of Public Safety to use their machine. (Police Patrol Video Tr. at Defendants' Appendix pp. 85-89; Frank Dep. Tr. at 14-15.) Officer Frank informed Taylor of her rights and Taylor signed the Rights Sheet form. (Police Patrol Video Tr. at Defendants' Appendix pp. 91-92; O.W.I. Arrest Report at p. 2.)  Officer Frank obtained a sample of Taylor's breath which indicated an alcohol concentration of .113. (Police Patrol Video Tr. at Defendants' Appendix pp. 93-94; Frank Dep. Tr. at 21-23.)

Officer Frank then interviewed Taylor and wrote her answers on an OWI report. (Police Patrol Video Tr. at Defendants' Appendix pp. 96-102; O.W.I. Arrest Report at pp. 5-7.)  Officer Frank placed handcuffs on Taylor and transported her to the Johnson County jail.  (Police Patrol Video Tr. at Defendants' Appendix pp. 103-07; Frank Dep. Tr. at 23-24.) Upon arriving at the jail, Taylor threatened to run and took a few steps upon exiting the car. (Police Patrol Video Tr. at Defendants' Appendix pp. 107; Frank Dep. Tr. at 24.)  Officer Frank took Taylor into the jail, conveyed her custody to county officials, and went back on patrol. (Frank Dep. Tr. at 24-25.)

According to officer Frank, Taylor was cooperative during the sobriety tests:

She wasn't agitated, she was emotional.  We paused every once in awhile and she would cry.  She talked about fearing losing her children, and so I would

pause and let her, you know, regain her composure before we continued the test.

(Frank Dep. Tr. at 30.) Taylor did not complain of any injuries from the accident. (*See* O.W.I. Arrest Report at p. 7; Frank Dep. Tr. at 31.)

The charge of OWI against Taylor was subsequently dismissed because officer Frank failed to appear for trial. (*See* Abstract of Court Record (Ex. 5 to Plaintiff's Appendix (Clerk's No. 49)).) Officer Frank was out of town and the county attorney's request for a continuance was denied. (Frank Dep. Tr. at 36-37.)

In January of 2003, Taylor was charged with driving while revoked. (Taylor Dep. Tr. at 47.) A jury found her guilty of the crime. *Id.* Upon an independent review of the record, the Iowa Supreme Court dismissed Taylor's appeal as frivolous.

Taylor filed a Police Citizen's Review Board complaint against officer Frank on February 26, 2003. (*See* Police Citizens Review Board memorandum dated July 7, 2003 (Ex. 16 to Plaintiff's Appendix).) As required by city ordinance, the Iowa City Police Department conducted an internal affairs investigation of the incident. *Id.* According to Matt Johnson, a Captain with the police department, the investigation concluded that the charges against Taylor were factually accurate and based on probable cause. (Johnson Aff. ¶ 6.) The investigation also concluded that Taylor's arrest was effected without the excessive use of force, officer Frank acted appropriately and did not use rude or offensive language, and officer Frank did not drive recklessly to cause injury to Taylor. *Id.* The investigation also concluded that the videotape was submitted by officer Frank in the same form it was

recorded, without evidence of alteration. *Id.* No disciplinary action was taken against officer Frank as a result of the incident. *Id.*

## IV. ANALYSIS

To establish a claim under 42 U.S.C. section 1983, Taylor "'must show a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States.'" *Fakorzi v. Dillard's, Inc.*, 252 F.Supp.2d 819, 827 (S.D. Iowa 2003)(quoting *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999)). To survive a motion for summary judgment, she must raise a genuine issue of material fact as to whether the alleged wrongful conduct deprived her of a constitutionally protected federal right. *Kuha v. City of Minnetonka*, 365 F.3d 590, 596 (8th Cir. 2004).[1]

There are numerous legal claims listed in Taylor's complaint, but without any elaboration as to the specific basis for each claim. (*See* Complaint ¶ 19.) Even though the complaint was filed by counsel, the court has liberally construed the claims set forth therein because Taylor is now proceeding pro se.

After reviewing the record in the light most favorable to Taylor, the court finds that there is no genuine issue for trial on any of her various claims against either the City or officer Frank. Although she makes numerous allegations of inappropriate conduct by officer Frank, there is no evidence in the record supporting those allegations.

Despite the witnesses present during her arrest, Taylor concedes that there is no other person who can support her claims. (Taylor Dep. Tr. at 33.) She also concedes that there is nothing on the videotape which supports her allegations. *Id.* at 34. In addition to the lack of

---

[1] There is no dispute that officer Frank was acting under color of state law.

recorded, without evidence of alteration. *Id.* No disciplinary action was taken against officer Frank as a result of the incident. *Id.*

## IV. ANALYSIS

To establish a claim under 42 U.S.C. section 1983, Taylor "'must show a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States.'" *Fakorzi v. Dillard's, Inc.*, 252 F.Supp.2d 819, 827 (S.D. Iowa 2003)(quoting *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999)). To survive a motion for summary judgment, she must raise a genuine issue of material fact as to whether the alleged wrongful conduct deprived her of a constitutionally protected federal right. *Kuha v. City of Minnetonka*, 365 F.3d 590, 596 (8th Cir. 2004).[1]

There are numerous legal claims listed in Taylor's complaint, but without any elaboration as to the specific basis for each claim. (*See* Complaint ¶ 19.) Even though the complaint was filed by counsel, the court has liberally construed the claims set forth therein because Taylor is now proceeding pro se.

After reviewing the record in the light most favorable to Taylor, the court finds that there is no genuine issue for trial on any of her various claims against either the City or officer Frank. Although she makes numerous allegations of inappropriate conduct by officer Frank, there is no evidence in the record supporting those allegations.

Despite the witnesses present during her arrest, Taylor concedes that there is no other person who can support her claims. (Taylor Dep. Tr. at 33.) She also concedes that there is nothing on the videotape which supports her allegations. *Id.* at 34. In addition to the lack of

---

[1] There is no dispute that officer Frank was acting under color of state law.

any supporting evidence, Taylor herself admits to having a "very spotty" memory of the incident. *Id.* at 36.

Taylor has no recollection of taking any of the sobriety tests. *Id.* at 29, 32. She does not remember being booked at the jail or what happened at the jail *Id.* at 29-30. She does not remember being interviewed. *Id.* at 32. As stated by Taylor: "Like I said, I don't remember being there. I don't remember being asked those questions or anything." *Id.* at 31.

In contrast to the lack of evidence brought forward by Taylor, the record indicates that officer Frank acted appropriately and professionally when interacting with Taylor. Officer Fink testified that he observed no unusual interactions between Taylor and officer Frank:

> Q. What was [Taylor's] demeanor as she spoke with the officer?
>
> A. It was, as far as I can remember, calm. Nothing out of the ordinary. Nothing that would make me feel concerned or question what was going on.
>
> Q. And how about the demeanor of Officer Frank?
>
> A. The same. Nothing that – that raised concern for me.
>
> Q. Do you recall Officer Frank raising his voice at all?
>
> A. Never.
>
> Q. Do you recall him screaming or yelling at the plaintiff?
>
> A. Never.
>
> Q. Do you recall whether or not he was in any way physically or verbally abusive to the plaintiff at any time that you observed them together?
>
> A. Never.

(Fink Dep. Tr. at 12-13.)  Officer Fink did not observe any injuries to Taylor or recalled her complaining of any injuries. *Id.* at 12.

Officer Lenoch, who remained at the scene, also testified that he did not see any inappropriate behavior by officer Frank. (*See* Videotape of Lenoch Dep. (Ex. 36 to Plaintiff's Appendix).)  He observed no yelling, screaming, abusive comments, or inappropriate physical activity by officer Frank. *Id.*  He also did not recall Taylor having any injuries or making any complaints. *Id.*

Ms. Gingerich also did not observe anything unusual about the interaction between officer Frank and Taylor. (Gingerich Dep. Tr. at 34, 36.)  She stayed in the house but observed them periodically from her window. *Id.* at 10.  According to Ms. Gingerich, officer Frank appeared to be acting professionally and "[i]t just looked like a regular conversation." *Id.* at 12, 36.

In addition to those witnesses' observations, the tape of the incident, which the court has reviewed, completely invalidates Taylor's allegations.  In her complaint, Taylor alleges that after she identified herself to officer Frank he became "very hostile, angry, menacing, and physically harmful." (Complaint ¶ 16.)  She alleges that he yelled, screamed, spit in her face, and grabbed her arm forcefully causing her head to snap "back and forth, causing seriously traumatic and painful injury." *Id.* ¶ 17.  She also alleges that officer Frank drove his "vehicle in an erratic and violent manner, causing [her] to be thrown against the passenger interior of the vehicle." *Id.*  Taylor repeated these allegations during her deposition. (*See* Taylor Dep. Tr. at 21-27.)

On the tape, however, Officer Frank speaks in a calm and professional manner to Taylor.  He did not raise his voice.  He did not yell or scream.  There is no sign that he physically harmed her in any manner.  It also appears that officer Frank drove normally and responsibly while transporting Taylor.  Although the tape does not start recording at the very beginning of the conversation between officer Frank and Taylor, it does capture the majority of the time period referred to by Taylor.

Taylor further alleges that officer Frank continued to physically abuse her and at one point "forced her to orally ingest a beverage that burned her eyes and throat." (Complaint ¶ 17; Taylor Dep. Tr. at 27-28).  Again, there is simply no evidence on the tape that even suggests that these allegations occurred.

Taylor contends that the tape was altered including portions being erased and "voices dubbed over." (Taylor Dep. Tr. at 35-36.)  Although the audio on the tape is poor at times and is absent for a few minutes near the end, there is no evidence before this court or any indication from viewing the tape that it had been improperly erased or altered.  Taylor had the videotape reviewed by a media service company which merely stated that it is "possible" to edit audio. (*See* Statement by Pro Video Interactive (Exs. 24, 25 to Plaintiff's Appendix).)

This court is mindful that it must construe the facts in the light most favorable to Taylor, and has done so.  The court can not accept allegations, however, which are supported by no evidence and, instead, are directly contradicted by witnesses' testimony and an audio recording of the incident.  Based on the record submitted, no jury could reasonably find in favor of Taylor on any of her various claims.

Taylor's primary complaints arise from her unsupported allegations of verbal and physical abuse by officer Frank. An "excessive force claim is analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Kuha*, 365 F.3d at 597 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

> "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). . . . "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865 (citations omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* (citations omitted).

*Id.* The facts set forth in the present record lead to only one conclusion: officer Frank's actions under the circumstances were objectively reasonable. Despite Taylor's claims to the contrary, the only evidence of force used by officer Frank in the record is when he briefly restrained Taylor as she attempted to walk away from the vehicle and the placement of hand cuffs on her. Neither action could be viewed objectively as an unreasonable use of force.

The claims relating to Taylor's January 2003 charge of driving while revoked, which the court construes to include the malicious prosecution and abuse of legal process claims, also fail as a matter of law. As stated by the Supreme Court,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Taylor's conviction has not been invalidated and, therefore, her claims are not cognizable under section 1983. *Id.*; *see also Grant v. Farnsworth*, 869 F.2d 1149, 1151 (8th Cir. 1989)(holding § 1983 constitutional claims based on alleged false arrest collaterally estopped by prior conviction for interference with official acts).

Taylor's claims which challenge the validity of her arrest for operating a vehicle while intoxicated also fail, even though that charge was dismissed.

> For an arrest to be valid under the Fourth Amendment, the arrest must be supported by probable cause. "Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense at the time of the arrest." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000)(internal quotations omitted). *See also*, *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948)("Probable cause exists where the facts and circumstances within [the officers'] knowledge, and of which they had reasonable trustworthy information, [are] sufficient in themselves to warrant a man or reasonable caution to the belief that an offense has been or is being committed.")(internal quotation omitted). The Court does not evaluate each piece of information independently, but rather considers "all of the facts for their cumulative meaning." *United States v. Nation*, 243 F.3d 467, 470 (8th Cir. 2001). "[T]he probability, not a prima facie showing, of criminal activities is the standard of probable cause." *United States v. Wallraff*, 705 F.2d 980, 990 (8th Cir. 1983). The difference between probable cause and reasonable suspicion is based on the quantity, quality, and reliability of the evidence available to the officers at the time of the detention. *United States v. Wheat*, 278 F.3d 722, 731 (8th Cir. 2001).

*Fakorzi*, 252 F.Supp.2d at 829. The undisputed, material facts in the present record which include the accident, Taylor's own admissions, the officers' observations, and the sobriety test results, establish that officer Frank had probable cause to arrest Taylor for operating a vehicle while intoxicated.

Taylor's claims for false arrest and false imprisonment also fail when examined under Iowa law.

> "In Iowa, false arrest is indistinguishable from false imprisonment . . . ." *Barrera v. Con Agra, Inc.*, 244 F.3d 663, 666 (8th Cir. 2001). The torts are defined as "an unlawful restraint on freedom of movement or personal liberty." *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477 (Iowa 1982). To make a prima facie case of false imprisonment, plaintiffs must show that they were unlawfully restrained against their will. *Children v. Burton*, 331 N.W.2d 673, 678-79 (Iowa 1983).

*Fakorzi*, 252 F.Supp.2d at 832. Defendants do not dispute that Taylor was restrained against her will, but contend that the restraint was lawful. The court agrees.

> [U]nder Iowa law, an officer may make a warrantless arrest if he has a "reasonable ground" for believing a crime has been committed. *Children*, 331 N.W.2d at 679; *see also*, Iowa Code § 804.7(3)(2003). Iowa Courts have stated that "[t]he expression 'reasonable ground' is equivalent to traditional 'probable cause.'" *Id.* However, "in dealing with civil damage action for false arrest, courts apply a probable cause standard *less demanding* than the constitutional probable cause standard in criminal cases." *Id.* at 680 (emphasis added). "If the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." *Id.*

*Fakorzi*, 252 F.Supp.2d at 832-33. The undisputed, material facts show that officer Frank's decision to arrest Taylor was based on a reasonable belief that she had operated her vehicle while intoxicated.

Taylor's claims also fail if construed as substantive due process claims under the Fourteenth Amendment.

> "The Fourteenth Amendment guarantees '[s]ubstantive due process [, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'"

\* \* \*

> "[T]he threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

*Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004)(quoted citations omitted). The acts of officer Frank here certainly do not rise to the level of egregiousness required to establish a constitutional violation. Under the record presented, no jury could reasonably find that his conduct was outrageous or shocks the conscience.

Finally, the claim against the City under a respondeat superior theory also fails as a matter of law. Even if Taylor had a valid underlying claim against officer Frank, "'a municipality cannot be held liable under § 1983 on a respondeat superior theory.'" *Kuha*, 365 F.3d at 603 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In addition, the record does not contain any evidence that shows a City custom or policy caused a constitutional violation against Taylor. Therefore, the City is entitled to summary judgment.

## V. CONCLUSION

Plaintiff Marie Taylor has failed to provide the court with any evidence supporting her various claims against either Derek Frank or the City of Iowa City. Instead, the record before this court indicates that her claims are completely void of merit and fail as a matter of law. Defendants' Motion for Summary Judgment (Clerk's No. 32) is, therefore, granted. Plaintiff's claims shall be dismissed.

IT IS SO ORDERED.

Dated January 12, 2006.

THOMAS J. SHIELDS
CHIEF U.S. MAGISTRATE JUDGE